IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01264-MSK-KLM

ISAAC TODD,

     Applicant,

v.

LARIMER COUNTY COURT, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

KRISTEN L. MIX, United States Magistrate Judge

Before the Court is an **Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#5] (the "Amended Application"), filed by Isaac Todd ("Applicant"), who is represented by counsel. The Amended Application presents a single claim. Respondents filed an Answer [#22] on August 29, 2013, and Applicant filed a Traverse [#29] to the Answer on November 1, 2013.

The Amended Application is now ripe for resolution. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Amended Application is referred to this Court for a recommendation regarding disposition. *Order* [#21]. The Court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Amended Application [#5] be **DENIED**, and Applicant's claim be **DISMISSED WITH PREJUDICE**.

# I. Summary of the Case

On August 31, 2011, the Larimer County Court entered a judgment of conviction against Applicant on a jury verdict finding him guilty of one count of Driving While Ability Impaired (DWAI) in Case No. 10T1624. *Am. Appl.* [#5] at 1-2. Applicant was sentenced to one year of supervised probation. *Id.* at 1.

The following facts relevant to Applicant's conviction were summarized by the Larimer County District Court in Applicant's direct appeal:

> On July 3, 2010, law enforcement pulled over [Applicant] for allegedly failing to dim his bright lights. The officer asked [Applicant] to complete standard field sobriety tests. [Applicant] consented, and agreed to complete a blood test when the officer concluded [Applicant] did not perform the tests in a manner consistent with sobriety. [Applicant] was subsequently charged with Driving Under the Influence ("DUI") and failing to signal. When the blood test results came back, his bloodstream tested negative for alcohol but positive for Delta-9 THC at the level of 9 ng/ml. [Applicant] contended that the 9ng/ml of Delta-9 THC was the result of medical marijuana that he had consumed earlier that day, and that it had no bearing on his alleged impairment. After a two-day jury trial, [Applicant] was found not guilty of failing to signal and not guilty of DUI, but guilty of the lesser charge DWAI.

*Order* [#i1-2] at 1-2.

On September 26, 2012, the Larimer County District Court affirmed the conviction in Case No. 2011CV2149. *Order* [#11-2]. The Colorado Supreme Court denied Applicant's petition for certiorari review on April 29, 2013. *Order* [#11-4].

Applicant filed his initial application on May 14, 2013 [#1]. He submitted an Amended Application, which is the operative document, on May 24, 2013. [#5]. The Amended Application was drawn to Chief Judge Marcia S. Krieger and the undersigned. *Order* [#13].

Applicant asserts a single claim for relief, i.e., that the trial court violated his Sixth

Amendment confrontation rights, as articulated in *Davis v. Alaska*, 415 U.S. 308 (1974), by unreasonably restricting "defense counsel's ability to cross-examine the State's expert witness regarding [her previous false statements about her college major] and the "witness's bias towards and motivation to continue [to provide] favorable testimony for the State." *Am. Appl.* [#5] at 4.

## II. Analysis

### A.   Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus may be granted only if the applicant's conviction or sentence was based on an underlying state court decision that (1) was "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The first and second standards of review involve claims of clear legal error. The Court considers an applicant's claims of clear legal error only if it first "affirmatively answer[s] the threshold question" of whether clearly established federal law exists. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). A state court decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent, i.e., it arrives at a conclusion that is "opposite" or "diametrically different" from the precedent. *Williams*, 529 U.S. at 406. A state court decision involves an unreasonable application of federal law when it utilizes the correct legal principle but reaches an "objectively unreasonable"

outcome based on the facts at issue. *Id.* at 409.   However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly.   Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'"   *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

The third standard of review involves claims of factual error. When reviewing an application for a writ of habeas corpus, a state court's findings of fact are entitled to a presumption of correctness.   *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982).   As such, an applicant bears the burden of rebutting this presumption "by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).   While this standard requires a substantial showing by the applicant, "deference [to the state court's factual determinations] does not by definition preclude relief."   *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B.      Applicant's Claim Under the Sixth Amendment

Applicant asserts that the trial court violated his Sixth Amendment confrontation rights by unreasonably restricting defense counsel's cross examination of the State's expert witness.   In order to determine whether a violation of Applicant's confrontation rights occurred, the Court reviews the Larimer County District Court's order affirming Applicant's conviction for an unreasonable application of federal law or a conclusion that is contrary to federal law.   As further explained below, the Court finds that the Larimer County District Court properly applied the standards established by the United States Supreme Court to the claim raised by Applicant, and appropriately concluded that Applicant could not prove

that the restrictions on cross examination prejudiced his defense in violation of the Sixth Amendment.

### 1.      Applicable Federal Law

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI.   "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."   *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted).   The Supreme Court has recognized that "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but [is also] . . . allowed to impeach, i.e., discredit, the witness." *Id.* at 316.   Thus the Confrontation Clause may be violated where the defendant is denied the right "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."   *Id.* at 318.   *See also Smith v. State of Illinois*, 390 U.S. 129, 131-32 (1968) (holding that petitioner's confrontation rights were violated when the trial court denied him the right to ask the principal prosecution witness either his name or where he lived, after the witness admitted that the name he had first given was false).   Further, the Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."   *Davis*, 415 U.S. at 316-317.

However, the Confrontation Clause does not prevent the trial court from imposing any limits on cross-examination.   *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Trial judges have wide discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the

issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original). Even so, a trial court may violate a defendant's confrontation rights by prohibiting all inquiry into an event that "a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony." *Van Arsdall*, 475 U.S. at 679.

### 2.    State Court Proceedings

Prior to Applicant's county court trial, the prosecution identified Cynthia Burbach as an expert in forensic toxicology. Defense counsel issued a subpoena duces tecum for Ms. Burbach's college transcript, based on information counsel had received from others concerning alleged incidents in which Ms. Burbach allegedly exaggerated, misstated, and falsified various aspects of her scientific education when testifying under oath as an expert. *See Record*, *Court File*, at 89, 97. The Colorado Attorney General filed a motion to quash the subpoena on behalf of Ms. Burbach. *Id.* at 107.

At a pre-trial hearing, Applicant's counsel indicated that the defense was not interested in the grades on the transcript, but instead wanted a list of the courses to determine whether Ms. Burbach qualified as an expert. *See Record, Tr.* (July 7, 2011 Hrg.), at 18-19. The county court ordered Ms. Burbach to produce her college transcript, but allowed her to redact her actual grades and grade point average. *Id.* at 19-20. Although Ms. Burbach provided a redacted transcript, defense counsel was able to ascertain that Ms. Burbach allegedly had a 1.6 GPA in her chemistry courses. *See id.*, *Tr.*

(Aug. 26, 2011), at 11-12; *see also Op. Brief* [#11-1] at 3 (describing how defense counsel calculated Ms. Burbach's GPA).

At a second hearing, defense counsel asked the court for permission to show the jury Ms. Burbach's transcript to support counsel's impeachment of the witness, based on Ms. Burbach's previous testimony, in different court proceedings, that she had majored in biology; double majored in biology and chemistry; and, majored in chemistry, when – in fact – she had graduated with a general Bachelor of Science degree and had performed poorly in several of her chemistry classes. *See Record, Tr.* (Aug. 26, 2011), at 11-14. Ms. Burbach's counsel from the Attorney General's Office objected to defense counsel's request on the basis that the transcript was protected under the Family Educational Rights and Privacy Act ("FERPA") of 1974, 20 U.S.C. § 1232g (2012). *Id.* at 16. Defense counsel then agreed with the trial court that the impeachment issue should be limited to Ms. Burbach's prior inconsistent testimony about her college degree(s). *Id.* at 31-32. Based on this agreement, the trial court ruled that defense counsel was allowed to examine Ms. Burbach about her college background and degree(s), and determined that counsel did not need to introduce the transcript. *Id.* at 26-32. The trial court expressly precluded cross examination about Ms. Burbach's specific grades and grade point averages. *Id.* The trial court noted that if Ms. Burbach testified that she had other or different degrees from those reflected in the transcript, then it would revisit the admissibility of the transcript to challenge such testimony. *Id.* at 31.

At trial, the prosecution called three witnesses: (1) Ms. Burbach; (2) a blood technician to introduce evidence of Applicant's blood test results; and (3) the arresting police officer. *Record*, (Aug. 30-31, 2011 Trial). The prosecution presented and qualified

Ms. Burbach as an expert in forensic toxicology and she testified about the effects of THC[1] on the human system. *See id.* (Aug. 30, 2011 Trial), at 119, 124-148.

On cross-examination, Ms. Burbach testified that: (1) she received a general bachelor of science degree from New Mexico State University in 1976 (and was confronted with her prior testimony that she had instead received a degree in one of the following: chemistry, biology, or biochemistry); (2) New Mexico State University did offer a degree in chemistry at the time she attended (and was confronted with her prior testimony that there were no opportunities for specializations or majors at the time she attended and graduated from the University); (3) she did not accumulate enough chemistry credits to receive a chemistry degree; and, (4) her bachelor of science degree was later reissued as a biology degree, not a chemistry degree. *Id.* at 149-156.   Defense counsel inquired about Ms. Burbach's college chemistry grades, but the prosecution objected to the subject matter based on the pretrial orders. *Id.* at 157.

In a bench conference, the trial court ruled that Ms. Burbach was qualified to testify as an expert, that there was no showing that she had "lied completely about her scientific background and that she possessed none of the qualifications to do what she does," and that "the rest of the testimony [should] stand on its own, subject to cross-examination based on any impropriety in the testing or in the conclusions that [this expert] has reached based on the literature that's been provided." *Record*, (Aug. 30, 2011 Trial), at 163-165.   The trial court further ruled that Ms. Burbach's college transcript was inadmissible and refused to permit questioning about her specific college grades. *Id.*   After deliberating, the jury

---

[1]   THC is an acronym for delta-9-tetrahydracannabinol, the main chemical in marijuana. *Record*, (Aug. 30 Trial), at 123.

acquitted Applicant of failure to signal and DUI, but found him guilty of DWAI. *See id.* (Aug. 31, 2011 Trial), at 370.

On direct appeal, Applicant argued to the Larimer County District Court that the trial court's limitation on defense counsel's cross examination of Ms. Burbach violated his Sixth Amendment confrontation rights. *Op. Brief* [#11-1].  Applicant maintained that he sought to impeach Ms. Burbach's credibility at trial by establishing that she had repeatedly misrepresented her educational background in court proceedings, but was unable to do so without first introducing the college transcript. *Id.* Applicant further argued that the restrictions on cross examination prevented him from demonstrating that Ms. Burbach was biased in favor of the prosecution based on information that several district attorneys' offices knew about her inconsistent testimony, but did not prosecute her for it, and instead continued to retain her as an expert. *Id.*

The Larimer County District Court, sitting as an appellate court, concluded that the trial court's limitations on the cross examination of Ms. Burbach did not violate the Applicant's Sixth Amendment right to confrontation. *Order* [#11-2] at 12.  The District Court found that *Davis v. Alaska* was distinguishable from the Applicant's case on the following grounds:

> This case differs from *Davis* in that the [Applicant] here was not completely prohibited from making any inquiry about Ms. Burbach's qualifications and her previous testimony. The trial court limited [Applicant's] cross-examination in only two aspects: (1) he could not question the witness regarding specific undergraduate grades received, and (2) he could not introduce her academic transcripts. This is "not a *Davis v. Alaska* situation.". . .

*Order* [#11-12] at 10.

The state appellate court went on to distinguish the case of *Van Arsdall* based on

the following:

> . . . [Applicant] was allowed to cross-examine Ms. Burbach regarding her degrees, and elicited from her that (1) she originally received only a general bachelors of science degree, (2) she was mistaken on whether New Mexico State University offered a degree in chemistry at the time of her graduation, (3) she previously testified that her degree was in chemistry or biochemistry, and this was in error, (4) she did not accumulated [sic] enough credits in the field of chemistry to receive a chemistry degree, and (7) she had received an updated degree in biology and not chemistry. The only limit to that cross-examination by the trial court was the questioning regarding specific college grades from thirty years ago and the introduction of the accompanying transcript.
>
> . . .
> *Van Arsdall* is distinct from the case at hand. In *Van Arsdall*, just as in *Davis*, the trial court prohibited all inquiry into the possibility that the witness would be biased. Here, the trial court placed a very narrow limit on [Applicant's] cross-examination that did not prohibit all inquiry into the possibility of bias. [Applicant] was given an opportunity for effective cross-examination, and the trial court was well within its discretion to place the reasonable limits that it did on the cross-examination of Ms. Burbach.

*Id.* at 11.

### 3.    Application of AEDPA Standard of Review

Applicant argues that the restrictions on cross examination concerning Ms. Burbach's college grades and transcript prevented the defense from sufficiently informing the jury that her expert credentials were unreliable.  Specifically, Applicant sought to establish that Ms. Burbach had: previously lied under oath about her college degree, but had not been prosecuted for her perjury by the prosecutors who continue to hire her to testify as an expert for the State; and, that she had no reasonable belief that she had earned a chemistry degree from New Mexico State University, given that she received a 1.04 GPA in her chemistry courses.  *Am. Appl.* [#5] at 4; *Reply* [#29] at 13-14.

The Court initially finds that the state court record lacks evidentiary support for Applicant's contention that state prosecutors continue to hire Ms. Burbach as an expert

witness, despite alleged knowledge that she has perjured herself in several criminal trials. The Court further finds that the trial court's restrictions on any questioning concerning Ms. Burbach's specific college grades and the admission of her college transcript were reasonable given Applicant's stipulation to the restrictions at a pre-trial hearing. Further, the witness's college grades are of questionable relevance. Ms. Burbach obtained her undergraduate degree more than thirty years before Applicant's trial. The trial court qualified Ms. Burbach as an expert, based in substantial part on her ten years of work experience as a forensic toxicologist for the Colorado Department of Public Health, as well as her post-graduate training and education classes. *Record* (8/30/11 Trial, at 112-119).

In addition, the state court record demonstrates that Applicant was able to cross examine Ms. Burbach effectively concerning her prior inconsistent testimony about her college degree. Applicant used the information to emphasis the witness's unreliability in closing argument:

> . . . I'm saying that Cynthia Burbach is a woman who testified falsely previously as to having majored in chemistry. She's an individual who represented under oath that taking a course in a subject could permit her to reasonably believe she majored in it. And she's also an individual who works in the scientific field and believes that acute and chronic users or marijuana are the same.

*Record*, (Aug. 31, 2011 Trial), at 356-57.

The Court finds that the state appellate court's determination of Applicant's Sixth Amendment claim was not contrary to, or an unreasonable application of, Supreme Court law. In *Davis* and *Van Arsdall*, the Supreme Court held that the defendant's right of confrontation was infringed when the trial judge excluded from cross-examination an entire area of inquiry that would have informed the jury of facts from which they could have

determined the reliability of the witness.  *Davis*, 415 U.S. at 318; *Van Arsdall*, 475 U.S. at

679.  Here, by contrast, the "trial court's control of the cross-examination process—allowing

for some impeachment and narrowing the scope of the questioning—fell well within its

broad discretion to "impose reasonable limits" on the process." *Hooks v. Workman*, 689

F.3d 1148, 1178 (10th Cir. 2012) (quoting *Van Arsdall*, 475 U.S. at 679).  The jury had

enough information, based on Applicant's cross examination about Ms. Burbach's prior

testimony concerning her educational background, to make a discerning appraisal of the

witness's credibility and biases.  Moreover, even if the trial court had allowed Applicant to

question Ms. Burbach about her specific grades reflected in the college transcript, there is

no reasonable probability that the jury would have received a "significantly different

impression" of the witness's credibility.  *See Van Arsdall*, 475 U.S. at 680.

### III.  Conclusion

For the reasons set forth above, the Court finds that Applicant is not entitled to relief

pursuant to 28 U.S.C. § 2254.  No evidentiary hearing is required.  Accordingly, the Court

respectfully **RECOMMENDS** that the Amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 [#5] be **DENIED** and that Applicant's remaining Claim 2(b)

be **DISMISSED WITH PREJUDICE**.

The Court **FURTHER RECOMMENDS** that the District Judge certify pursuant to 28

U.S.C. § 1915(a)(3) that any appeal from the conclusions stated in this recommendation

would not be taken in good faith and therefore in forma pauperis status should be denied

for purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant

files a notice of appeal, he should be ordered to pay the full $505 appellate filing fee or file

a motion to proceed in forma pauperis in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

The Court **FURTHER RECOMMENDS** that no certificate of appealability be issued because Applicant has not made a substantial showing of a constitutional right.

IT IS **FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated this 9th day of December, 2013, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-13-